## Commonwealth ex. rel. Miller et al. *versus* Cornish.

By a fundamental article of the discipline of the Methodist Episcopal Church the right of ordaining elders and appointing their charges is vested in the bishops. A charter was granted to a congregation represented by trustees recognizing their connection with that church. An amendment to the charter whose object is obscure, will not be construed to give the right to the trustees of the congregation of electing the elder in charge, where the effect would be to violate the fundamentals of the discipline of the M. E. Ch., to which the congregation profess to adhere, and where the usage for thirty years has been in accordance with the discipline.

ERROR from the Common Pleas of *Philadelphia :*

January 28th, 29th.—This was a case stated to try the right of the respondent to the office of minister of the African Methodist Episcopal Bethel Church, in the city of Philadelphia, the relators being the trustees of the corporation.

By the charter of the church granted in 1796, it was declared that the corporation should hold the building called Bethel Church and such other churches as should become the property of the corporation, in trust for the religious use of the ministers and preachers of the Methodist Episcopal Church, who are in connexion with the general conference of said church, and also for the minister and teachers of the African brethren duly licensed or ordained according to the form of discipline. It was further declared that the trustees and members of this corporation acquiesced in and accorded with the rules of the Methodist Episcopal Church for their church discipline and worship, and that they would continue forever in union with the Methodist Episcopal Church of Philadelphia, subject to the government of the present bishops, and their successors in ecclesiastical affairs and transactions, so long as the articles and creed remained unaltered.

That the elder of the Methodist Episcopal Church for the time being, in the city of Philadelphia, appointed by the conference of the church to the charge of the Methodist society in said city should nominate the preacher who shall officiate in the said Bethel church, who was authorized to license exhorters and preachers from among the members of the congregation.

By an amendment to the charter in 1807, the board of trustees

were authorized to nominate a preacher, reserving the right to the elder of the Methodist E. Ch. as theretofore, to preach once on Sunday and once during the week.

In 1816, the African M. E. C. separated from the white methodists and promulgated their book of doctrines and discipline.

In this book of discipline it was declared that the superintendent or acting bishop, in conjunction with his associates at the annual conferences should fix the appointments of travelling ministers, and in the interval he might exercise his judgment in connection with one or more of the neighboring preachers, provided that no preacher should remain on one circuit station longer than two years, unless the bishop in his judgment saw fit. In the bishops also was vested the power of ordaining elders who were to be elected by the annual conference.

The duty of elders having charge is in the absence of the general superintendent to take charge of all elders, deacons, traveling and local preachers and exhorters in his charge.

By an amendment to the charter of the Bethel church in 1837, the trust was declared to be for the members &c. of the African M. E. C., and none other. And it was further declared by the 7th sec., that the ministers of the A. M. E. Ch., appointed as thereinafter specified, shall from time to time, nominate the preacher or preachers who shall officiate in the church called Bethel, or in any or all churches of the corporation.

By the 8th article it was declared that the trustees and official members should appoint from their own body, or the other members, a minister or ministers for the term of three years, with a right of removal with the concurrence of two-thirds of the quarterly conference.

And by the 10th article it was provided that the trustees, ministers, exhorters and leaders, convening after notice, should have power to elect from their own body, a presiding minister of the African M. E. Ch., to superintend the churches, to license preachers and exhorters, to preside over the church or churches, agreeably to the discipline thereof.

In 1816, Allen was elected the first bishop of the African M. E. Ch., and from the date of the amended charter to his death continued to be the minister in charge of Bethel church. The bishop, his successor, occupied the same office until 1844. At the conferences of that year and of 1845, 6, 7, the bishop appointed the minister in charge. In June, 1848, the bishop appointed the present respondent, who was received by the board of trustees. Dissensions having arisen, the board of trustees met and elected S. Bassit, a licensed preacher of their own body, to be the minister in charge for six months. Before these proceedings were commenced the term had expired. It was proved by one of the ministers of this denomination that the ministry consisted of three

[Com'th ex. rel. Miller et al. *v.* Cornish.]

classes, bishops, (sometimes called superintendents,) elders and deacons—that no church can be considered Episcopal who rejects the authority of the bishop—the duty of the bishop is to ordain members and appoint them to their respective pastoral charge.— His power in this respect was entirely independent of the congregation.

The court being equally divided gave judgment for the respondent.

*W. W. Wallace* and *Pettit*, for plaintiffs in error.—The right to the office depends on the charter of the particular church. By the amendment of 1817, this is vested in the trustees, and is not to be controlled by the general discipline of the church at large. Until 1845 there was no appointment under the discipline of the methodist church, the bishop himself acted as the minister. Nor can the acquiescence of the congregation abrogate their chartered rights. But there is no conflict with any article of faith by the charter.

*Gibbons*, contra.—This church is essentially Episcopal, and in connection with the methodist society. It was so in its creation. The separation in 1817, was merely of the two races, no essential change in doctrine or discipline was introduced. Its subsequent practice has been accordant. The attempt is made under an obscure clause in the charter to violate the fundamentals of the church—to render it no longer Methodist Episcopal—but congregational by giving the right to nominate ministers to the trustees, a matter which has always been resisted: Steele *vs.* The People, *S. C. of N. Y.*, 1848. The amendment was intended to provide against an interference by the white bishops, who had a chartered right which could only be divested by a new charter.

This would render the charter consistent in not violating a fundamental of the discipline of that denomination to which it professes to adhere. If it is doubtful, the usage affords a construction supporting the respondent, 11 *S. & R.* 38; 3 *R.* 279, 288; 4 *East* 327, *Cowp.* 538. It will be observed that unless this is so, the office has no claimant.

The opinion of the court was delivered by

GIBSON, C. J.—If the meaning of the article in the amendments on which the question turns, be that the trustees, ministers, exhorters and leaders, should elect their pastors from among themselves, the members of the corporation have not been, as they most certainly intended and supposed themselves to be, in communion with the African Methodist Episcopal Church. The doctrine and discipline of that church, as set forth in the published exposition of it, is fashioned in a great measure after that of

the white Methodist Episcopal Church in England and America; in which the election and ordination of the priesthood by the general or annual conference, the ordination of them by laying on of hands by a bishop and elders, and the fixing of their appointments by the bishop, are cardinal points—the last of them a distinctive one. It is the rock on which the church is founded, and on which it has prospered. Remove the church from it, and it ceases to be methodistic. The election and ordination of elders, and the fixing of their appointments, are regulated by articles which are fundamental; and how does the article in the amendments comport with them? There is in the terms of it a remarkable want of precision. It provides for the election of a " presiding *minister,* to superintend the churches, to license preachers, and to preside over the churches agreeably to the discipline thereof." But his discharge of those duties, as an elder in charge, would be a violation of every part of the discipline. The person who framed the article on the amendments, probably had in view the office of a *presiding* elder, whose duty in the Methodist Episcopal Church is, " to exercise within his own district, *during the absence of the superintendents,* (bishops,) all the powers vested in them by the government of the church: provided that he never act *contrary to an express order of the superintendents.*" His action, therefore, would be at most, provisional, and subordinate to that of the permanent authority of the bishop. Consequently, by that interpretation—and it is that which goes furthest to reconcile the amendment to the standards of the church,—the induction of the respondent by the bishop was legal and canonical.

But in any aspect whatever, a congregational election of a presiding elder could be neither. To say nothing of the fact that the discipline requires him to be elected by the annual conference, he might, being taken from the *trustees,* members, *exhorters,* or *leaders,* happen to be a layman; and, in that event, who was to set him apart? If he was to be ordained by laymen or not at all, the object of the amendment was to make the church congregational while it professed to be methodistical; and it was therefore a disingenuous one. The annual conference could not ordain him, and its connexion with the congregation would be virtually dissolved. Besides, the word minister is not used in the discipline as the specific name of any clerical officer whatever. The clergy are divided into bishops, elders and deacons; the exhorters, local preachers and leaders, are laymen. With all the lights obtained from an elaborate argument, I am unable to discover the drift of this strange amendment. But contemporaneous practice is a powerful interpreter of doubtful meaning; and when long continued by common consent—as in this instance for more than thirty years—it is irresistible. Perhaps a legal presumption might arise from lapse of time that this fundamental article, irreconcileable to

[Com'th ex. rel. Miller et al. *v.* Cornish.]

the usage and practice of the church, had been expunged in the way known to the law.   In every aspect it is a riddle ; and the congregation have been wise in treating it as a nullity.   They could not have done otherwise without abandoning their standards and falsifying the name of the incorporation.

But even if the corporation had power to choose its members, it has forborne to exercise it.   Surely, then, professing to be a methodist congregation, and refusing to elect for itself, it might waive its right and receive its ministers from the hand of the bishop according to the regulations of the church with which it professed to be connected.   If it might not, all its spiritual acts since the amendments were adopted, have been invalid; and how far its temporal acts might be affected by reason of the illegality of the appointment to office of the president of the board of trustees, might raise a serious question. Perhaps the acts of the elder in charge, as an officer *de facto* might be good ; but it certainly is not the policy of the corporation to encourage strife and litigation. The best friends of its peace and prosperity will not do so.

The respondent, therefore, is the legally inducted elder in charge ; and the trustees who were expelled by him pursuant to the discipline of the church, have no standing in court.

Judgment affirmed.