## Rhodes et al. v. Kulp et al.

*Robert C. Haberstroh* and *Park H. Loose,* for plaintiffs.

*Samuel H. Jubelirer, James W. Nelson* and *Robert F. Campbell,* for defendants.

GRIFFITH, J. (forty-seventh judicial district), specially presiding, November 22, 1950.—This bill in equity was filed on July 23, 1949, by certain members of the district elders' body of the Church of the Brethren, members of the board of deacons and lay members of the Twenty-Eighth Street Church of the Brethren in Altoona against defendants, Henry F. Kulp, pastor of that church, certain of the board of deacons and other lay members of the church. The prayer of the bill was that an injunction issue to restrain defendants from using the church property for the furtherance of their activities and for purposes other than the worship of Almighty God according to the faith and usages of the Church of the Brethren. At the time of the filing of the bill a temporary injunction was granted but subsequently it was dissolved, and defendants filed an an-

swer in the nature of preliminary objections raising the issue of the sufficiency of the bill. On December 12, 1949, the preliminary objections were dismissed and defendants directed to file an answer on the merits, which was done.

In addition to the testimony taken on May 23 and 24, 1950, and on August 8, 1950, the testimony taken before Judge Patterson, president judge of the twenty-fourth judicial district, was made part of the record by stipulation of counsel. At the conclusion of plaintiffs' testimony on August 8, 1950, defendants advised the court of their desire to move for the dismissal of the bill under Equity Rule 66. An argument was had on October 31, 1950, and briefs filed.

Since the entry of a decree of dismissal has the effect of a nonsuit at law, the testimony must be considered in the light most favorable to plaintiffs: Gordon et al. v. Gordon et ux., 277 Pa. 53, 55.

According to the usages and customs of the Church of the Brethren, the pastor of each church is elected by the congregation. According to plaintiffs' testimony, however, the procedure to be followed in revoking or suspending a pastor's ministry is that contained in the minutes of the annual conference of the Church of the Brethren held at Orlando, Fla., in 1947, part F, subdivision VI, subsec. B., which reads as follows:

"B. Offenses of Ordained Ministers and Elders.

"An ordained minister or elder owes his ministry to the district elders' body, is responsible to the same, and shall be disciplined by them.

"The following steps shall constitute the procedure in handling cases of discipline involving any ordained minister or elder:

"1. The report of any alleged offense, hereinbefore mentioned or otherwise, shall be presented in writing to the moderator or to one of the officers of the district elders' body, setting forth the charges.

"2. The officers of the elders' body shall either appoint or become a committee of investigation and counseling, whose duty it shall be to gather carefully and impartially all the facts relevant to the case, and to counsel with the person involved.

"3. The committee of investigation and counseling shall report its findings to the officers of the district elders' body and if, in their judgment, the facts support the accusations presented, the moderator shall bring the matter to the district elders' body.

"4. The accused shall have the right to present any written or oral statement in his behalf, and to interrogate the committee of investigation.

"5. The elders' body shall have the authority to review and weigh the evidence presented, and to make further investigation if this appears desirable; and shall have jurisdiction in determining the degree of the guilt of the accused and to make the final decision as to whether or not the accused shall be exonerated, or removed from the ministry or from the eldership, or from membership in the church, or whether a lesser penalty shall be fixed.

"6. The elders' body shall have the authority to receive and consider an application or request for reinstatement into the ministry or eldership. If there is satisfactory evidence that the individual concerned has truly repented and has proved himself worthy of the confidence of the church and of the high calling of the office of the Christian ministry, they are empowered to reinstate him.

"7. Any minister has the right of appeal to the Standing Committee of the Annual Conference if not satisfied with the decision of the district elders' body."

Defendants contend that the suspension and subsequent revocation of the ministerial license of defendant, Henry F. Kulp, was in violation of the requirements for procedure outlined by the church laws. Since the

congregation has the power to elect its own pastors, it is apparent that unless the ministry of defendant, Henry F. Kulp, was properly revoked in accordance with the church laws the bill must be dismissed.

"The laws of the ecclesiastical body will be recognized and enforced by the civil courts when not in conflict with the constitution and laws of the state": Krecker et al. v. Shirey et al., 163 Pa. 534, 551.

We find no conflict between the ecclesiastical laws of the Church of the Brethren and the Constitution and laws of the State of Pennsylvania. However, we must determine in considering defendants' motion for the dismissal of the bill under Equity Rule 66 whether the procedure provided by the ecclesiastical laws of the Church of the Brethren has been complied with.

In Krecker et al. v. Shirey et al., supra, the court said:

"Upon questions arising under the discipline, as upon those arising under the articles of faith, the decisions of the ecclesiastical courts are ordinarily final, and they will be respected and enforced by the courts of law. German Reformed Church v. Seibert et al., 3 Pa. 282; Stack v. O'Hara, 90 Pa. 477; Schlichter v. Keiter, 156 Pa. 119. But if such decisions plainly violate the law they profess to administer, or are in conflict with the laws of the land, they will not be followed: Commonwealth ex rel. v. Cornish, 13 Pa. 288; Stack v. O'Hara, supra."

In attempting to determine whether the decision of the Church of the Brethren in suspending and later revoking the ministry of defendant, Henry F. Kulp, violated the ecclesiastical law of the church, it is necessary for us to review chronologically the events which led up to the revocation of his ministerial license. It will be noted that the discipline of an ordained minister is given to the district elders' body. The first step

required in the procedure for the disciplining of an ordained minister is that a report of the alleged offense shall be presented in writing to the moderator or one of the officers of the district elders' body setting forth the charges. This was done in a letter dated March 30, 1949, written by the Rev. C. L. Cox, an elder of the Twenty-eighth Street Church of the Brethren to the moderator of the district. The second required step is that the officers of the elders' body shall either appoint or become a committee of investigation and counseling. In this case the officers of the elders' body did not become itself the committee for investigation and counseling, nor did the officers appoint such committee. The testimony is clear that the moderator and the moderator alone appointed a committee of three for this purpose, consisting of the Rev. Paul R. Yoder, Rev. H. Q. Rhodes and the Rev. G. Q. Showalter. On April 5, 1949, this committee of three met with the official board of the Twenty-eighth Street Church, but the meeting produced no reconciliation. Thereupon the committee of three associated themselves with a permanent committee of five which had been appointed in April 1948, not, of course, to investigate into the matter of Henry F. Kulp or the Twenty-eighth Street Church of the Brethren, but generally to deal with loyalty problems. These two committees combined to form a joint committee, and on April 11, 1949, the committee of three and two members of the committee of five wrote a letter to defendant Kulp, advising him that the "joint" committee, whose duty it was to investigate and counsel, had filed four "charges" against him. These charges consisted of statements that Kulp had been disloyal to the interpretation of the New Testament as believed in by the Church of the Brethren, that he had fomented strife in the church, that he had disseminated doctrines contrary to those of the church,

and insubordination. These charges were couched in general language and referred to no specific dates or acts on the part of Kulp. The letter stated that the joint committee would meet at the Twenty-eighth Street church on April 19, 1949, and that Kulp would there be given an opportunity of answering these charges. It will be noted that Kulp's accuser, Cox, sat in the committee meeting at which these charges were formulated. On April 14th Kulp wrote to each member of the committee protesting the regularity of the proceedings and calling attention to the fact that: (1) The committee of three was appointed by the moderator alone and not by the officers of the district elders' body; (2) that the committee of three had no authority to appoint additional members or to form a joint committee with the permanent committee of five; (3) that it was the committee's function to investigate and counsel on charges filed not by the committee itself but by somebody else and that they should not hear and determine the charges which they themselves had preferred, and (4) that he should be furnished with a statement of the specific offenses alleged against him in order to prepare a defense. It will be noted that Kulp was not furnished a copy of the specific charges against him until May 12, 1949, after his ministry had been suspended. On April 19, 1949, the joint committee met at the Twenty-eighth Street Church of the Brethren in Altoona, and at this meeting Kulp was heard on the general charges set out in the committee's letter of April 11th. At this meeting the committee, which refused to specify the charges against him, attempted to get him to answer "specific" questions pertaining to the difficulties which existed. On April 20th the committee reported to the district elders' body, and on April 21st Kulp was required to appear before the meeting of the elders' body, at which meeting a resolution was adopted

that his ministry "shall be" suspended as of May 5, 1949, unless before that date he invite a committee of elders to his church and bring his congregation into fellowship. The following day Kulp was advised by letter of this action of the district elders' body, and on April 25th, he invited the committee to meet with him and the church officers on April 28th, and such meeting was held without result. Another meeting was held on Tuesday, May 3, 1949, at which Rev. H. Q. Rhodes, as chairman of the committee, notified Kulp that he would be suspended as of May 5th. Rhodes testified "our committee suspended him as agent for the district elders' body". On May 6th Kulp sent his appeal to the moderator of the Annual Conference of the Church of the Brethren. On May 12th, or seven days after his suspension, Kulp received a copy of the letter written by Rev. C. L. Cox to the district moderator on March 30, 1949, containing the charges made by the latter. Although he had demanded a copy of the charges against him on several occasions he was not furnished with a copy until after his suspension became effective. On June 15th Kulp appeared before the standing committee of the annual conference of the Church of the Brethren held at Ocean Grove, N. J., which is the final authority in the church in the matter of discipline. On June 18th the standing committee by resolution found that the district elders' body had acted in good faith in revoking Kulp's ministry. It will be noted that they had not revoked but had merely suspended his ministry. However, the standing committee neither specifically affirmed nor specifically denied Kulp's appeal. Its finding was merely that the elders' body had acted in good faith. Moreover, the committee gave him the opportunity of having his license restored if he would become reconciled with the district elders' body and comply with the program and spirit of the

Church of the Brethren. Also a committee was constituted to assist in establishing a better understanding. On June 23rd Rev. William M. Beahm, secretary of the annual conference, wrote to Kulp advising him that his appeal had been considered and that a committee composed of the Rev. C. D. Bonsack and the Rev. I. S. Long would communicate with him. It appears, therefore, that Kulp was not advised that his appeal had been rejected. On July 7th at a meeting of the district elders' body at Martinsburg, the special committee of three and the advisory committee were present. At this meeting it was decided to revoke Kulp's ministry as of July 13th unless he present a satisfactory statement to the committee before that date. Here again the district elders' body avoided the responsibility entrusted to them by the minutes of the annual conference of making the final decision. They attempted to delegate this responsibility to the committee. On July 8th Lewis S. Knepper, the clerk of the district elders' body, advised Kulp by letter that by unanimous decision of the elders' body of the district his suspension was affirmed and that his ministry would be permanently revoked as of July 13th unless before that date he presented in writing to the committee a satisfactory statement of his willingness to bring his congregation into fellowship with the district and the brotherhood program. Without awaiting Kulp's reply, the committee prepared a written notice notifying him of the revocation of his ministry, which notice was prepared sometime prior to July 13th. On July 12th Kulp wrote Knepper stating that he recognized his obligation to conform to and have his congregation conform to the requirements of the denomination. On July 13th Rev. H. Q. Rhodes and Rev. Paul R. Yoder, of the elders' committee, revised their previously prepared notice of revocation which was written by them with the expectation that

Kulp would refuse to answer and advised him that his answer of July 12th was unsatisfactory and notified him that his ministry was permanently revoked as of July 13th. On July 23rd the present bill in equity was filed, seeking to restrain Kulp and the other defendants from using the property belonging to the Twenty-eighth Street Church of the Brethren. On June 15, 1950, the standing committee of the annual conference, then meeting at Grand Rapids, Mich., adopted a resolution finally rejecting Kulp's appeal. The testimony shows that plaintiffs themselves recognized that the appeal made by Kulp was still pending before the standing committee until it was finally disposed of on June 15, 1950.

This is not a case where the church authorities in accordance with their own ecclesiastical law had the right without formal accusation and trial to summarily remove a minister from his office, but this is a case where the basic law of the church, which, it is admitted, is contained in the minutes of the Orlando annual conference of 1947, provided in some detail for the procedure which must be followed in order to revoke or suspend a minister.

In such a situation "civil courts will inquire whether the organic rules and forms of proceeding prescribed by the ecclesiastical body have been followed": Furmanski et al. v. Iwanowski et al., 265 Pa. 1, 6.

An examination of the record in this case brings us to the conclusion that the organic rules and forms of proceeding prescribed by the ecclesiastical body of the Church of the Brethren have not been followed. The procedure prescribed by the church law was not followed in many respects; among them are the following:

1. The committee for investigation and counseling was not appointed by the officers of the district elders'

body, as required by the minutes of the annual conference, but was appointed by the moderator alone.

2. This committee of three, without authorization by the officers of the elders' body, formed a joint committee with a permanent loyalty committee of five, which latter committee had not been appointed by the officers of the elders' body after charges had been filed as required by the minutes of the annual conference.

3. Instead of advising Kulp of the specific charges filed against him, the committee merely advised him in the most general language that he had been charged with disloyalty, fomenting strife, dissemination of contrary doctrines and insubordination, and required him to answer these broad charges. The duty of the committee as set forth in the basic church law was to "gather carefully and impartially all the facts relevant to the case". Instead of obeying the injunction of impartiality imposed upon it by the church law, the committee, itself, formulated and filed charges against Kulp, and then proceeded to suspend him, acting, as the members of the committee testified, "as agent for the district elders' body". The committee's failure to act in accordance with the procedure outlined by the basic church law was called to their attention repeatedly by defendant, so they did not act through mere inadvertence. As an indication of the committee's lack of impartiality, attention is called to the fact that Kulp was not given a copy of the specific charges which had been filed against him until several days after action had been taken to suspend his ministry although he requested a copy of the charges on several occasions.

4. At the meeting held April 19, 1949, the committee, having refused to advise Kulp of the specific offenses with which he was charged, insisted that he make "specific" answers to general allegations. This procedure was the equivalent of charging a man with

"larceny," refusing to advise him the date of the alleged offense, what goods were supposed to have been taken or to whom they belonged, and then demanding that he prove "specifically" that he was not guilty. Such procedure by a supposedly impartial committee was not sanctioned by the ecclesiastical law of the Church of the Brethren. Kulp did the only thing left for him to do, which was to enter a general denial to the general accusation.

5. The elders' body on April 21st resolved that Kulp's ministry "shall be" suspended as of May 5th unless before that date he invite the committee to the church and use his influence to bring the congregation into fellowship. The committee was invited to the church, but the committee found that he had not brought the congregation into fellowship. The basic church law confers upon the elders' body alone the power of determining whether a ministry should be suspended or revoked. In this case the elders' body took no final action as required by section 5 of article VI of the minutes of the annual conference. The final decision to suspend him was taken by the committee. Plaintiffs contend that the "committee suspended him as agent for the district elders' body." But the ecclesiastical law gives the district elders' body no authority to delegate the power of suspension or revocation of a ministry, even if the resolution of April 21st could be construed as an attempt to so delegate it.

6. The district elders' body was by the church law given "jurisdiction in determining the degree of guilt of the accused and to make the final decision". In spite of this clear requirement, plaintiffs say that the elders' body at its meeting of July 7, 1949, delegated to the committee the authority to pass final judgment on the question of whether the statement which Kulp was to make in regard to his willingness to bring his congregation into fellowship with the district and the brother-

hood program was satisfactory. On July 13th the committee undertook to pass final judgment, and it, and not the elders' body, determined that Kulp's answer was unsatisfactory and notified him of the revocation of his ministry. As a further indication of the lack of impartiality on the part of the committee, it will be noted that the committee prepared a written notice to Kulp notifying him of the revocation of his ministry before his answer was received. Therefore, when Kulp made answer, the committee was forced to prepare a new notification. Such actions can only indicate a lack of the impartiality required by section 2, art. VI, of the basic church law.

It is not the function of this court to determine the guilt or innocence of defendant. The procedure in counseling and disciplining outlined by article VI of the minutes of the annual conference of 1947 are in no wise in conflict with the laws of this Commonwealth. Had this procedure been followed, this court would have had no choice but to issue the injunction as prayed for in plaintiffs' bill. We suggested at the conclusion of the hearing on May 23, 1950, that plaintiffs retrace their steps and follow the procedure in handling cases of discipline as provided by the ecclesiastical law of their denomination. It may be that defendants are guilty of disloyalty, insubordination and the dissemination of doctrines contrary to those of the Church of the Brethren, but until the procedure provided for by the basic church law has been complied with plaintiffs may not seek the aid of the courts to enforce their decisions.

Being of the opinion that the case set forth in the bill has not been sustained by the testimony adduced by the plaintiffs, we enter the following

## Decree Nisi

Now, November 22, 1950, after argument and upon due consideration, it is hereby ordered, adjudged and

decreed that the bill be dismissed at the costs of plaintiffs, and unless exceptions are filed within 10 days after notice, the Prothonotary of Blair County is hereby directed to enter the foregoing decree nisi as the final decree of the court.