# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Furmanski et al. *v.* Iwanowski et al., Appellants.

*Evidence—Sufficiency—Findings of fact—Varying methods of expression.*

1. When there is sufficient evidence to sustain a fact found by the proper tribunal, varying methods of expression in regard thereto are unimportant.

*Church law—Church tribunals—Determination of scope and effect of laws—Conclusiveness—Summary removal of pastor—Loss of salary—Right to formal accusation and trial—Jurisdiction of courts—Review.*

2. In matters relating to a church or other voluntary organization its members are bound by and required to conform to its laws, and the scope and effect thereof are conclusively determined by its appropriate tribunals selected for the purpose.

3. If by the laws of a voluntary organization, an official may be summarily removed from his office, the fact that he will thereby be deprived of fees which he would have received had he remained in the office, will not entitle him to a formal accusation, hearing and trial before removal.

4. If the right to summarily remove an official exists, the incidental effect of a loss of fees or salary will not change that right into a wrong, or give the courts jurisdiction to interfere in the matter.

5. The decision of the two judges in O'Hara v. Stack, 90 Pa. 477, disapproved, and that of the court in Stack v. O'Hara, 98 Pa. 213, affirmed.

*Churches—Incorporation—Effect—Church  laws — Appointment
and removal of pastor.*

6. Obtaining a corporate charter for the purpose of the support
of public worship according to the faith, doctrine and usages of a
particular church, is an express recognition of the right of the
proper officials to appoint and remove its pastor in the manner pre-
scribed by its laws.

Argued April 14, 1919.  Appeal, No. 182, Jan. T., 1919,
by defendants, from decree of C. P. Luzerne Co., May T.,
1915, No. 12, in equity, awarding an injunction in the
case of Adelbert Furmanski, Peter Stawinski, Theodore
Janczewski and Joseph Krzyzanski, members for them-
selves, and such of the members of the Holy Trinity
Roman Catholic Polish Church and Congregation of
Nanticoke, Pa., as care to join as plaintiffs therein, v.
Rev. B. Iwanowski and Stanislaw Drozdowski, Frank
Kublinski, Charles Wasielewski, Paul Jacewicz, Peter
Pytel, Gregory Wasielewski, Zygmunt Carlinski and
Casimier Thiarowicz, Trustees of the Holy Trinity Ro-
man Catholic Polish Church and Congregation of Nanti-
coke, Pa.  Before Brown, C. J., Moschzisker, Frazer,
Simpson and Kephart, JJ.  Affirmed.

Bill in equity for an injunction.  Before Woodward, J.

The court entered a decree enjoining defendant, the
Rev. B. Iwanowski, from exercising any of the functions
of the office of parish priest for the congregation and en-
joining the trustees and other defendants from interfer-
ing with any other duly appointed priest from performing
his duties with regard to the congregation.  Defendants
appealed.

*Errors assigned* were, among others, the findings of
fact and conclusions of law and the decree of the court.

*W. N. Trinkle,* of *Bell, Trinkle & Deeter,* with him
*Abram Salsburg* and *Thos. D. Shea,* for appellants.—The
civil courts have a right to inquire into the validity of
the suspension of the appellant: O'Hara v. Stack, 90 Pa.

477; Wallace v. Trustees of General Assembly, etc., 194 Pa. 178; Wallace v. Trustees of General Assembly, etc., 201 Pa. 292.

If a church, in violation of its own laws, removes or suspends a preacher, and, in effect, wrongfully deprives him of his living, he can have recourse to the civil courts for restoration of his rights: Wallace v. Trustees of General Assembly, 194 Pa. 178; Wallace v. Presbyterian Church, 201 Pa. 292.

*John M'Gahren,* with him *Frank P. Slattery,* for appellees.—The civil courts decline to interfere in ecclesiastical controversies, except where rights of property are concerned: Tuigg v. Sheehan, 101 Pa. 363.

The tribunals of the church have exclusive authority to determine whether the priest was suspended according to church law.

OPINION BY MR. JUSTICE SIMPSON, May 5, 1919:

The evidence and argument in this case took a wide range, but we shall consider only the few important facts and the principles of law applicable thereto.

"The Holy Trinity Roman Catholic Polish Church and Congregation of Nanticoke, Pa.," is a corporation of this Commonwealth, formed "for the purpose of the support of public worship according to the faith, doctrine and usage of the Roman Catholic Church." It is located in the Scranton Diocese, and the bishop thereof appointed B. Iwanowski, one of the defendants, as priest of the church. Written complaints having been made to the bishop regarding the conduct of Iwanowski and the nonpayment of the debts of the church, the bishop on January 13, 1915, showed the complaints to Iwanowski, and gave him written directions "to call a meeting of the congregation of Holy Trinity, Nanticoke, for Sunday, January 17th, for the purpose of considering matters of general interest to the parish," the bishop verbally stating he

desired to know the views of the congregation in regard to the complaints. Iwanowski at first objected to calling the meeting, but, on being told he would be subject to suspension if he did not, requested a letter directing him to call it, and, on receiving the one from which the above quotation is taken, said he would do so, but the next day, January 14, 1915, telephoned the bishop he would not, was told by the latter suspension would follow if he did not, and defiantly retorted, "If I don't call the meeting you as bishop can suspend me, and I will call the matter higher." Because thereof the bishop forthwith suspended him from the exercise of the office of priest in said church; whereupon Iwanowski, apparently recognizing an appeal would not lie, presented complaints of nullity to the Apostolic Delegate at Baltimore, then to the Sacred Roman Rota, (which transferred it to the Sacred Congregation of the Council as the proper body to decide the complaint), and finally to the Holy See at Rome; the first two being the tribunals provided by the Roman Catholic Church to consider such matters, and the latter being ex gratia the authority to review proceedings where all other remedies have failed. In all his complaints he asserted he had been suspended on January 14, 1915, for refusing to call the meeting; and each of these tribunals in turn decided against him and sustained the bishop. It is alleged the decision of the Holy See has not been properly proved, but inasmuch as the decision of the Sacred Congregation of the Council would stand until reversed, and any action by the Holy See is purely ex gratia, we need not further consider the objection.

Notwithstanding his suspension, and notwithstanding the temporary appointment of another priest to fill the vacancy caused thereby, Iwanowski, acting in conjunction with the other defendants, who are trustees of the church, retained possession thereof, and exercised the usual priestly functions therein, and at the trial an-

nounced his determination to continue so doing "irrespective of what the bishop directs." Plaintiffs, who are members of the church, filed the present bill praying that he be enjoined from holding any services or performing or exercising any of the functions of the office of parish priest for said congregation, and that the remaining defendants be enjoined and restrained from obstructing or interfering with any other duly appointed priest in the performance of his duties in regard to said church; defendants answered the bill; the case was tried in due course; a final decree was entered as prayed for, and this appeal taken.

In our foregoing summary of the important facts we have not found it necessary, despite the elaborate arguments of appellants in regard thereto, to consider the different methods of expression used by the bishop when testifying as to the "suspension" or "removal" of Iwanowski. Many, if not all of these differences are purely verbal, owing to the use of those words interchangeably and as synonymous in meaning. The court below has found, upon ample evidence, that the only intention and effect were to remove Iwanowski from the office of priest in the particular church, leaving him as a duly ordained priest capable of being appointed to any other church, and of being reinstated in this church if and when he shall have complied with the legal requirements of his superiors; and so he has been treated throughout. Especially is discussion on this point unnecessary, inasmuch as neither by the bill in equity nor the decree appealed from, is the action of the bishop given or sought to be given any greater effect than the limited one above stated.

In matters relating to a church or other voluntary organization its members are bound by and required to conform to its laws, and on a proper occasion will be enjoined from acting otherwise. Where it has appropriate tribunals to decide what are the scope and effect of

its laws their decisions duly made are binding on the members unless in violation of the law of the land: German Reformed Church v. Com. ex rel. Seibert, 3 Pa. 282; Henderson v. Hunter, 59 Pa. 335; Tuigg v. Treacy, 104 Pa. 493; Krecker v. Shirey, 163 Pa. 534; Irvine v. Elliott, 206 Pa. 154; Watson v. Jones, 13 Wallace, 679. Defendants do not challenge these principles, but contend that the law of the land would be violated if the bishop was permitted to remove Iwanowski without an accusation, trial and judgment in due course, and for this they refer to O'Hara v. Stack, 90 Pa. 477, 490, where it was said by two of the five judges of this court that "When rights of property are in question, civil courts will inquire whether the organic rules and forms of proceeding prescribed by the ecclesiastical body have been followed......and if followed whether they are in conflict with the law of the land," a conclusion against which no one contends, but which, because of an alleged property right in the emoluments of the office, was there erroneously held to require a formal accusation, trial and finding of guilty, before a priest could be deprived of the right to officiate in a particular church.    Perhaps it would be sufficient to say in the present case that there is neither averment nor proof that the effect of sustaining the bishop's action would be to deprive Iwanowski of any of the emoluments he had theretofore received; on the contrary the finding is he still has "the right to remain in the benefice, but the ceremonies must be performed by some one sent by the bishop to perform them for the suspended priest." We prefer, however, to plant our decision on broader grounds than a defect in the pleadings and proofs.

After our decision in O'Hara v. Stack, supra, the priest sued the bishop to recover the emoluments of which he alleged the unlawful action of the bishop had deprived him; and we held (Stack v. O'Hara, 98 Pa. 213) that under the laws and usages of the Roman Catholic Church

the bishop had a right, without a formal accusation and trial, to summarily remove a priest from his office in a particular church, because "His profession is that of a priest in the church. He acquired it by compact. He holds it under a promise to obey the laws of the church and the proper orders of the bishop......The profession of priest or minister in any denomination is taken subject to its laws. These he agrees to obey. If they become distasteful to him he can withdraw—no power can compel him to remain and perform his priestly functions; but if he violates the laws of his church, or disobeys the lawful commands made in accord with his compact, the civil courts will not maintain his footing in the church. If the plaintiff was removed in accord with the law of the church he has no cause of complaint. If such laws provide that the bishop may remove a priest without trial, he has no right to a trial, and if they provide that he shall have recourse to the bishop's superior in case of wrongful removal, his remedy is by such recourse, for this is his contract." This conclusion was approved and followed in Tuigg v. Sheehan, 101 Pa. 363, 370. Admittedly the laws of the Roman Catholic Church have not been changed in this respect since then, and we have no inclination to alter our judgment as thus expressed, for to hold otherwise might result in the demoralization of the particular congregation and injuriously affect the church at large and religion generally.

The underlying thought in the minds of the two judges who spoke for the court in O'Hara v. Stack, supra, evidently was to assimilate this class of cases to others of removal from office, and to give to each incumbent the like legal protection. That thought was laudable and with it we are in entire accord; but it was there erroneously applied because they overlooked the rule that in all such cases the question is one of authority to do the particular thing complained of, and if the superior has a right to remove the official in the way he does, the inci-

dental effect of a loss of fees or salary will not change that right into a wrong, and hence will not give the courts jurisdiction to interfere. For this reason we have held that where power has been given so to do, an appointed officer may be removed summarily by the power which appointed him (Lane v. Commonwealth ex rel., 103 Pa. 481) ; an elective officer may be legislated out of an office not constitutional (Commonwealth v. Weir, 165 Pa. 284; Commonwealth v. Moir, 199 Pa. 534), each during his term of office, without notice or a hearing, and irrespective of the emoluments of the office; and an officer de jure is entitled to his salary although by reason of a contest of his election he was not able to perform its duties (Rink v. City of Phila., 17 Phila. 205, affirmed in City of Phila. v. Rink, 1 Sadler 390). As stated above, the question is solely one of authority; and, as the court below found, upon competent evidence, that under the laws of the church the bishop had a right to summarily remove Iwanowski for refusing to call a meeting of the congregation, we would be compelled to sustain the decree even if its effect was to take from him the emoluments he would otherwise have received, for his only property right therein is dependent on a legal right to the office, and terminates when that legal right ceases.

It is not necessary to separately consider the other questions argued, save to say the claim that the effect of the incorporation of the church is to render it independent in the matter of the selection of its priests, has been fully answered in Kicinko v. Petruska, 259 Pa. 1.

The decree of the court below is affirmed and the appeal dismissed at the cost of appellants.