Commonwealth of Pennsylvania ex rel. Reverend D. Douglas Roth, Petitioner *v.* Charles J. Kozakiewicz, Warden of the Allegheny County Jail, Respondent.

Heard November 20, 1984, before Judges CRAIG and BARRY.

*Thomas A. Crawford, Jr.,* for petitioner.

*Roger C. Wiegand,* with him, *Kenneth C. Kettering, Reed, Smith, Shaw & McClay,* for intervenor, Bishop Kenneth R. May etc.

OPINION BY JUDGE CRAIG, November 21, 1984:

In these habeas corpus proceedings, this court must consider whether an equity court may use a conditional incarceration commitment as a sanction to enforce a preliminary injunction which bars a church pastor from functioning in a particular church, pursuant to the court's decision that his denomination has excluded him under its rules—or whether that sanction should be negated by releasing the defendant by habeas corpus proceedings.

The Court of Common Pleas of Allegheny County, by Judge NARICK, after holding a hearing in *Western Pennsylvania—West Virginia Synod of the Lutheran Church in America v. D. Douglas Roth,* No. GD 84-19518, an equity suit by the Synod as plaintiff, issued a preliminary injunction ordering the defendant, Reverend D. Douglas Roth, (1) to desist from performing any pastoral functions at the Trinity Evangelical Lutheran Church or any other church in that denomination, and (2) not to interfere directly or indirectly with the performance of pastoral functions at that church by other pastors designated to perform them by the Bishop of the Synod. After the defendant nevertheless appeared in the pulpit of that church on the following Sunday, and the pastor designated to appear by the Synod was excluded, Judge NARICK issued a rule for contempt, held a hearing on the rule, made the rule absolute, issued an attachment for a hearing on adjudication of contempt, held that adjudication hearing, and adjudicated the defendant as being in contempt of the injunction. Accordingly, the judge committed the defendant to the Allegheny County Jail for a maximum of ninety days, but expressly stated that the commitment shall cease on the moment of compliance with the injunction, to consist of the defendant appearing before the court to promise that he

will desist from performance of pastoral functions, that he will not interfere directly or indirectly in such performance by others designated by the Synod, and that he will not enter the premises of the church without the consent of the Synod. In view of the rather unpersuasive claim that the defendant's appearance in the pulpit was merely to make a "statement," rather than to perform pastoral functions, the requirement that the defendant confirm his obedience by remaining off the premises was apparently included to avoid ambiguity and contentiousness. (The contempt order also imposed a fine on the defendant, but that matter is not involved in this habeas corpus proceeding.)

At the outset, we definitely conclude that the described order is a civil contempt order, not one sounding in criminal contempt, because it does not impose imprisonment as retribution for past disobedience but terminates the conditional jail commitment upon a simple expression of willingness to comply with the decree unqualifiedly. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980); *In re Martorano*, 464 Pa. 66, 77-79, 346 A.2d 2, 27-29 (1975).[1]

The defendant did not file an appeal but instead presented a petition for writ of habeas corpus to the Superior Court. The Superior Court, noting that this court, in addition to possessing habeas corpus jurisdiction under 42 Pa. C. S. §6502(a), also would have jurisdiction over any appeal in this nonprofit corporation case, 42 Pa. C. S. 762(a)(5), transferred the ha-

---

[1] In a recent decision, *Neshaminy Water Resources Authority v. Del-Aware Unlimited, Inc.,* —— Pa. Superior Ct. ——, 481 A.2d 879 (1984), the Superior Court reaffirmed the rule that the contempt proceeding is civil in nature if the dominant purpose is to coerce the contemnor to comply with the court's directive. *Neshaminy* involved the public expression of opinion, consisting of demonstrations by individuals opposed to the construction of a water pumping station on the banks of the Delaware River.

beas corpus petition proceedings to us to assure a unitary approach to the subject matter.

This court promptly issued to the warden having custody of the defendant, not the writ itself, but a rule to show cause why it should not be issued, pursuant to 42 Pa. C. S. §6504.

On the return day, the warden presented the equity court's commitment as his basis for having custody of the defendant.

First, therefore, is the question whether habeas corpus may provide a remedy here, in lieu of an appeal and request for supersedeas. The second question is whether this court should grant relief by making the rule absolute and releasing the defendant.

## 1. Habeas Corpus as Remedy

The general rule, of course, has long been that habeas corpus is not a mere optional substitute for an appeal when incarceration is involved. However, even with respect to civil contempt proceedings, *Commonwealth ex rel. Di Giacomo v. Heston*, 292 Pa. 63, 140 A. 533 (1928), has held that, in habeas corpus,

the appellate court may exercise original jurisdiction and grant relief where *lack of power* to make the order, or sentence complained of, appears ... *but not otherwise* .... *and, in passing upon the application, the record alone will be considered* .... The best practice, and the one usually followed, is to appeal from the judgment entered ... , but the question raised may be considered in *appropriate* cases either in that manner or on writ of habeas corpus, and both methods have been resorted to in attacking the same decree. .... (Emphasis added.)

292 Pa. at 66, 140 A. at 534.

In *Heston,* which involved a civil contempt order imposing imprisonment to compel payment of a money decree, the Supreme Court released the defendant because the order was obviously in violation of the statutes forbidding imprisonment for debt.

In *Commonwealth ex rel. Lieberum v. Lewis,* 253 Pa. 175, 98 A. 31 (1916), the Supreme Court had earlier proceeded in habeas corpus to examine a civil contempt commitment used to compel a defendant to remove an unlawful building; there, however, the court upheld the commitment and declined to release the defendant.

Habeas corpus proceedings have also been used to release defendants in "appropriate" cases of criminal contempt commitments, where the "lack of power" to make the commitment was egregious and apparent, *e.g., Commonwealth ex rel. Wright v. Hendrick,* 455 Pa. 36, 312 A.2d 402 (1973) (indigent father's failure to pay child support not willful). The Superior Court, on the other hand, has rejected the habeas corpus remedy and preferred the appeal process, in certifying to the Supreme Court a question of a criminal contempt commitment in connection with allegedly false unsworn statements made during pre-sentencing proceedings. *Commonwealth v. Harris,* 195 Pa. Superior Ct. 8, 168 A.2d 761 (1961).

In short, the sound rule appears to be that, even in a civil contempt matter, if a court has ordered confinement with an apparent lack of authority to do so, the appellate court will not dismiss the habeas corpus petition on a purely procedural ground but will examine the committing court's legal power to impose incarceration.

Of course, as noted above, the appellate court cannot retry the matter, nor rethink the factual findings

of the trial court, but merely must consider if there is any rule of law which bars the contempt sanction.

## 2. The Relief Question

Although, as noted above, the appellate court in this situation may consider the record of the trial court's hearing, and although ten days intervened between the date of the judge's commitment order and the argument to this court, the defendant has apparently not attempted to obtain a record of that hearing for this court to consider. Hence, to consider whether or not the trial court had legal authority to use a civil contempt commitment to enforce its decree, we must examine the reasons alleged in the petition.

First, the petition claims that the trial court was without "jurisdiction" because the exclusion of the pastor was not justified by denomination rules, because the denomination had unclean hands and because the injunction silenced a pastor who was merely exercising his freedom of speech. Of course, such matters do not go to jurisdiction at all. Moreover, if legal power exists, we cannot here go behind the disobeyed decree to review it factually, as if upon appeal. In a contempt case, the Supreme Court has said that

"... an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."

*Philadelphia Marine Trade Assoc. v. International Longshoremen's Assoc.,* 453 Pa. 43, 49-50, 308 A.2d 98, 102 (1973).

Secondly, the petition claims that the trial judge exceeded his authority by "punishing" the defendant with the ninety-day jail sentence. The commitment order itself negates this claim, being clearly, as noted

above, a conditional commitment to achieve compliance and not a jail sentence imposed as a punishment.

The defendant petitioner also contends that the trial judge's commitment violates 42 Pa. C. S. §4132, limiting "summary punishments for contempts" to official misconduct, disobedience as to process or misbehavior in the presence of the court. Again, the commitment here is not a punishment, nor was it imposed summarily, but only after the multiple-step hearing process prescribed for contempt proceedings. *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 6, 253 A.2d 263, 266 (1969).

Similarly, 42 Pa. C. S. §4133 and §4136, also cited by the defendant, are inapplicable because they expressly deal with criminal contempts and not with the civil contempt sanction here involved. Therefore, 42 Pa. C. S. §4136(3), giving entitlement to a jury trial, is inapplicable, as this court has held in *Woodruff v. Township of Lower Southampton,* 68 Pa. Commonwealth Ct. 171, 448 A.2d 692 (1982), relating to that same section as formerly numbered, 42 Pa. C. S. §4135.

Counsel for the defendant next points to 42 Pa. C. S. §5108, Pa. R.C.P. No. 1481 and Pa. R.C.P. No. 3250, all of which prohibit arrest in civil proceedings except "as punishment for contempt." Counsel reads the reference to "punishment" as establishing that deprivation of liberty in a civil case may be used in connection with criminal contempt proceedings only. The argument goes too far, because, if accepted, the courts would have no power to use a conditional civil commitment to enforce decrees. Counsel appears to acknowledge that such impotence cannot be the case; he therefore grants that the courts may imprison under civil contempt orders but only after affording a jury trial when requested, under 42 Pa. C. S. §4136. However, as noted above, that provision of the Judicial

Code is wholly inapplicable to civil contempt proceedings.

Another reason offered is that if the defendant complied with the decree, there would be "a chilling effect" upon freedom of religion, separation of church and state, freedom of speech, and due process, such as to constitute an "unconstitutional exercise of jurisdiction." The decree on its face, however, in no way limits the defendant's freedom of speech or exercise of religion, nor deprives him of any property. He is free to speak, preach, and worship. He is only barred from acting officially under the aegis of the denomination of which he is a member, and there would have been no reason to bar him from the premises of the church if he or his counsel did not insist upon pressing the unworkable distinction between his making of a "statement" as an individual from the pulpit and the pastoral function of speaking from the pulpit. Here also, there is no question of the court's jurisdiction involved.

Finally, the petition argues that the trial judge should have disqualified himself and that the evidence at the preliminary injunction hearing did not support the result. The courts of Pennsylvania have never reviewed these matters in the context of habeas corpus. These are issues reviewable upon appeal, with proper recognition of the limitations as to the scope of review of an appellate court.

## CONCLUSION

This court's conclusion is that the trial judge followed proper procedure, allowed full due process, fashioned a rational preliminary injunction according to the facts as he found them, and proceeded by proper civil contempt commitment to require that the defendant obey the injunction while pursuing the available

appellate remedies. Here the defendant need not accomplish any affirmative and irrevocable act, such as demolishing a building, as in the *Lewis* case, in order to be released from confinement. He need only refrain from certain denominational functions while pursuing an appeal.

The rule should be discharged.

ORDER

Now, November 21, 1984, rule to show cause why a writ of habeas corpus should not issue for the release of relator D. Douglas Roth, is hereby discharged.