510 A.2d 908

Rev. D. Douglas Roth, Appellant *v.* Bishop Kenneth R. May, on behalf of the Western Pennsylvania-West Virginia Synod of the Lutheran Church in America, Appellee.

Argued March 12, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, BARRY, COLINS and PALLADINO.

*Thomas A. Crawford, Jr.,* for appellant.

*Roger C. Wiegand,* with him, *Kenneth K. Kilbert* and *Kenneth C. Kettering, Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY JUDGE ROGERS, June 11, 1986:

This case is the companion of *Trinity Evangelical Lutheran Church of Clairton v. Bishop Kenneth May, on behalf of the Western Pennsylvania-West Virginia Synod of the Lutheran Church in America,* 3797 C.D. 1984, filed this day. Both cases arise out of actions of the pastor and some members of a local church congregation, Trinity Evangelical Lutheran Church of Clairton (Trinity Lutheran), taken in what they believed to be the interests of unemployed steel workers in the Monongahela Valley of Western Pennsylvania.

Trinity Lutheran is affiliated with the Lutheran Church in America (LCA), which is a nationwide hierarchical religious denomination incorporated under the laws of Minnesota. The LCA is divided into thirty-three synods, each of which is charged with the "oversight and advancement of the mission of the church within its bounds."[1] The membership of each Synod "consist[s] of the congregations and ministers certified to it" by the LCA.[2] Trinity Lutheran is a constituent congregation of the Synod of Western Pennsylvania–West Virginia.

---

[1] Section 1.61 of the Synod's Constitution.
[2] Section 1.51 of the Synod's Constitution.

The appellee is the Reverend Kenneth R. May, who is the Bishop of the Synod of the Western Pennsylvania-West Virginia (Synod) and the Synod's chief executive officer.

The appellant is the Reverend Mr. D. Douglas Roth who was the pastor of Trinity Lutheran until the events of this case.

The governance of LCA and its synods and the member congregations is provided in the constitution or bylaws of the LCA, the several Synods and the local congregations.

The Constitution of the LCA provides at Article VI, Section 3, that each congregation shall, in its application for admission into the LCA, covenant to abide by the enactments of the LCA and of the Synod of which it is a member, and at Article VII, Section 7, that Synods are vested with the responsibility for disciplining ministers, including the deposition of ministers.

The Bylaws of the LCA provide in Section II that ministers "shall comply with the constitution, bylaws, and enactments of this church and of the synod of which a member"; that ministers will be subject to discipline for willful disregard and violation of the LCA's and the Synod's constitution; and that "if the circumstances are such that, in the opinion of the bishop of the synod, the church would suffer material injury by the accused's continuing to exercise the office of the ministry during the progress of disciplinary procedures, the bishop of the synod may immediately suspend the accused from the office and functions of the ministry until the charges have been fully and finally decided by the synod."

Trinity Lutheran's constitution provides in Article III that Trinity Lutheran accepts all the duties and obligations connected with its membership in the LCA and the Synod of Western Pennsylvania-West Virginia and that it "recognizes the constitution, bylaws, and

constitutional enactments of the Lutheran Church in America and of the Synod to which it belongs as having governing force in its life." Trinity Lutheran's Constitution also provides at Article V that "should [the pastor] be deposed from the office of the ministry, he shall automatically cease to be a pastor of this congregation."

The events which preceded the filing of Bishop May's complaint in equity on October 30, 1984, are as follows.

In June of 1984, the Synod received a petition signed by at least one-third of Trinity Lutheran's voting members who, pursuant to the constitutions of the Synod and of Trinity Lutheran, requested that the Synod investigate the conditions at the church with respect to the appellant. In accordance with §10.24(b) of the Synod's Constitution, which provides that it is the duty of the bishop to investigate conditions at a local church when he receives a petition signed by one-third of the local church's voting members, Bishop May appointed an advisory committee which accompanied him to Trinity Lutheran, where they met with the appellant and church members on August 4, 1984. Pursuant to §10.24(d) of the Synod's Constitution, the committee issued a report containing recommendations, which the appellant accepted but which a majority of the congregation rejected. Section 10.24(d) of the Synod's Constitution provides that when either the pastor or the parish fails to assent to the committee's recommendations, the matter is to be referred to the Synod whose action shall be final. The Synod in this case declared the pastoral office at Trinity Lutheran vacant effective October 17, 1984. In a letter dated October 16, 1984, Bishop May wrote to the appellant stating that the Reverend Mr. Mont Bowser, his designate, or *locum tenens*, in the vacant office, would perform the pastoral functions at Trinity Lutheran on

October 21, 1984. Bishop May also requested that Trinity Lutheran congregation "continue the salary, housing, and benefits with the exception of car allowance for Pastor Roth for a three-month period of transition."

On October 21, Wayne Cochran, the president of Trinity Lutheran's church council, invited the Reverend Mr. Bowser to attend the church service, but told him that he would not be permitted to fill the pulpit. Moreover, despite the Synod's order of October 16 vacating the pulpit, the appellant, wearing ministerial vestments, made a statement to the congregation at the point in the service when the sermon is usually given.

By letter dated October 26, Bishop May wrote the appellant that the appellant had "failed to vacate the pastorate as directed," that he, Bishop May, was proceeding "with the presentation of charges for discipline," and that, pursuant to Section II, Item 15(v) of the LCA's Bylaws, he was immediately suspending the appellant from the office and functions of the ministry for willful disregard and violation of the Constitution and Bylaws of the LCA and the Synod. Bishop May directed that The Reverend Mr. Bowser would conduct worship services at Trinity Lutheran on October 28. On that day, Harry Dinkel, a member of Trinity Lutheran's council, physically prevented the Reverend Mr. Bowser from conducting the service, which was conducted by the appellant.

On October 30, Bishop May filed this complaint in equity with a motion for preliminary injunction. In his complaint, Bishop May alleged the facts we have described; to wit, that the Synod had declared the pastoral office at Trinity Lutheran vacant; that the Reverend Mr. Roth had prevented Bishop May's designated pastor from "filling the pulpit"; that the Synod had suspended the Reverend Mr. Roth "from the office and function of

the ministry"; and that the Reverend Mr. Roth had nevertheless continued "to fill the pulpit of Trinity and act as its pastor."

After a hearing on November 2, the Chancellor found the facts to be as we have recited them and ordered that the appellant desist preliminarily and until final order from performing any pastoral functions at Trinity Lutheran and from interfering directly or indirectly with pastoral functions performed at Trinity Lutheran by pastors designated by Bishop May. This is the Reverend Mr. Roth's appeal from this order.[3]

No final decree has been sought or entered.

In *Roberts v. School District of Scranton,* 462 Pa. 464, 468, 341 A.2d 475, 478 (1975), the late Mr. Chief Justice BENJAMIN R. JONES described the scope of review of the grant of a preliminary injunction as follows:

> As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the

---

[3] The Reverend Mr. Roth's extensive briefs attack the orders of the Chancellor made November 7 and 9, 1984, adjudicating him to be in contempt of the order of November 2, 1984, which *is* the subject of the instant appeal. As the Reverend Mr. Roth has served the time of confinement imposed on the account of the November 7 and 9 orders, those matters are moot.

Moreover, questions raised in the Reverend Mr. Roth's briefs regarding jurisdiction, right to a jury trial, and alleged infringement of freedom of religion were disposed of in an earlier opinion by the Commonwealth Court, per Judges CRAIG and BARRY, in support of an order discharging a rule to show cause why a writ of habeas corpus should not issue for the release of the Reverend Mr. Roth. *Commonwealth ex rel. Roth v. Kozakiewicz,* 86 Pa. Commonwealth Ct. 459, 485 A.2d 843 (1984).

court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. . . . 'In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.' Zebra v. Pittsburgh School District, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972). (Citations omitted.)

There were clearly reasonable grounds in the facts and law for the grant of the preliminary injunction by the Chancellor, the Honorable EMIL E. NARICK. The facts demonstrate a disregard by the Reverend Mr. Roth of the laws of the Church of which he and those under his care were members.

In *Stack v. O'Hara*, 98 Pa. 213 (1881), a Roman Catholic priest brought a suit against his bishop to recover emoluments of which he was allegedly deprived by his summary removal by the bishop. In upholding the lawfulness of the removal, the court wrote that:

His profession is that of a priest in the church. He acquired it by compact. He holds it under a promise to obey the laws of the church and the proper orders of the bishop . . . . The profession of priest or minister in any denomination is taken subject to its laws. These he agrees to obey. If they become distasteful to him he can withdraw—no power can compel him to remain and perform his priestly functions; but if he violates the laws of his church, or disobeys the lawful commands made in accord with his compact, the civil courts will not maintain his footing in the church. If the plaintiff was removed in accord with the law of the church he has no cause of

complaint. If such laws provide that the bishop may remove a priest without a trial, he has no right to trial, and if they provide that he shall have recourse to the bishop's superior in case of wrongful removal, his remedy is by such recourse, for this is his contract.

98 Pa. 233-34. Similarly, in *Furmanski v. Iwanowski,* 265 Pa. 1, 108 A. 27 (1919), the Supreme Court affirmed the decree of the court of common pleas enjoining the defendant, who had been suspended from his office of priest by his bishop, from exercising the functions of the office of parish priest. The court wrote that "[i]n matters relating to a church or other voluntary organization its members are bound by and required to conform to its laws, and on a proper occasion will be enjoined from acting otherwise. Where it has appropriate tribunals to decide what are the scope and effect of its laws their decisions duly made are binding on the members unless in violation of the law of the land." *Id.* at 5-6, 108 A. 29. In a more recent case, *Kaminski v. Hoynak,* 373 Pa. 194, 95 A.2d 548 (1953), the Supreme Court cited *Furmanski* as a controlling authority.

The undisputed material facts show that there was a division among the members of Trinity Lutheran concerning the Reverend Mr. Roth's pastorate; that the Bishop exercised the powers vested in him by the Constitutions and Bylaws of the LCA and the Synod; and that the Reverend Mr. Roth defied the Bishop's lawful orders that he vacate the ministry to that local congregation.

Decree affirmed.

## ORDER

AND NOW, this 11th day of June, 1986, the decree of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.