537 A.2d 38

Trinity Lutheran Evangelical Church, a non-profit corporation, D. Douglas Roth and Nadine Roth, Appellants *v.* Bishop Kenneth R. May, on behalf of The Western Pennsylvania-West Virginia Synod of The Lutheran Church in America, Appellees.

558

Argued October 7, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Rev. D. Douglas Roth*, with him, *Nadine Roth*, appellants, for themselves.

*Roger C. Wiegand, Reed, Smith, Shaw & McClay*, for appellees.

OPINION BY JUDGE CRAIG, January 19, 1988:

Trinity Lutheran Evangelical Church of Clairton appeals an order entered on September 17, 1986 in the Court of Common Pleas of Allegheny County, making permanent a preliminary injunction ordering Trinity to turn over all property to the Western Pennsylvania-West Virginia Synod of the Lutheran Church in America and to refrain from interfering with Synod's use of the property.

Trinity has raised the following claims of error for consideration by this court:

(1) The chancellor abused his discretion in confining the appellants for contempt and in denying their request for a jury trial on the contempt charges.

(2) The contempt citations were not supported by sufficient evidence.

(3) The chancellor erred in failing to recuse himself from the contempt hearing.

(4) The terms of the injunction violated the appellants' first amendment rights to freedom of speech and religion.

(5) The chancellor erred in making the injunction final, in the face of Trinity's allegation that the Synod failed to adjudicate the appeal which Trinity filed with the convention of the Synod.

Although we conclude that Trinity's first three claims of error are without merit and that Trinity has waived the fourth claim of error, we also conclude that the record fails to reveal whether the Synod ever adjudicated Trinity's appeal to the convention of the Synod, and we therefore vacate the chancellor's order making the injunction permanent and remand for a hearing on that issue.

### Facts

The facts of the case as determined by the chancellor are as follows. Trinity is a nonprofit Pennsylvania corporation which is governed by its own constitution and bylaws as well as those of the Synod and the Lutheran Church in America (LCA). During the latter part of 1983 and early 1984, a division began to arise within the congregation based on the pastor Reverend Roth's participation in the Denominational Ministry Strategy, an organization formed to deal with the plight of the unemployed workers of the area.

The Synod formed a committee to investigate the problems at Trinity. The committee recommended that certain actions be taken in an effort to reunite the congregation. The two factions could not agree upon these recommendations, and on October 12, 1984, the Executive Board of the Synod vacated the pulpit at Trinity and designated another minister to serve as pastor for

Trinity. Trinity's church council refused to recognize the Synod's designated pastor, and Reverend Roth continued to act as pastor. On November 2, 1984, the Synod sought and received a preliminary injunction restraining Reverend Roth from performing pastoral functions at Trinity.[1]

Despite the injunction, Reverend Roth continued to act as pastor at Trinity, which resulted in the trial court finding him to be in contempt of court.[2]

While incarcerated for contempt, Reverend Roth dictated sermons which were read to the congregation with the authorization of the church council. At about the same time members of the church council withdrew over $9,500 from the Trinity bank account and deposited the money into their personal accounts. The council also allowed a casualty insurance policy providing Trinity with over $500,000 of coverage to lapse and replaced it with a policy providing only $150,000 of coverage.

In response to these developments, the Executive Board of the Synod met by conference call on November 28, 1984, and adopted a resolution declaring the congregation at Trinity defunct. The Synod informed Trinity that, as a defunct congregation, they would be required, in accordance with the constitution of the LCA, to turn over all property of the congregation to the Synod. On December 3, 1984, a representative of the Synod requested that the church council turn over the keys to the church, and all of Trinity's property and records. The church council refused to comply.

---

[1] This court upheld that injunction in *Roth v. May,* 98 Pa. Commonwealth Ct. 104, 510 A.2d 908 (1986).

[2] As a result of being incarcerated for contempt, Reverend Roth filed a petition for habeas corpus which this court declined to grant. *Commonwealth ex rel. Roth v. Kozakiewicz,* 86 Pa. Commonwealth Ct. 459, 485 A.2d 843 (1984).

The Synod filed a complaint in equity requesting an injunction requiring Trinity to give the Synod control and possession of all church property and restraining Trinity from interfering with the Synod's operation of the church. On December 21, 1984, the chancellor issued a preliminary injunction.[3]

Trinity continued to refuse to turn over the church to the Synod. Some members of the church council locked themselves in the church basement and on January 4, 1985, were removed by the Sheriff of Allegheny County pursuant to writs of attachment issued by the chancellor. As a result of their failure to obey the injunction of December 21, 1984, the Trinity members were found in contempt of court.[4]

In September of 1986, the Synod filed a petition to make the preliminary injunction permanent. On September 17, 1986 without taking any further testimony, the chancellor issued an order of court which made the injunction permanent and ordered the property deeded to the Synod.[5]

---

[3] This court affirmed the preliminary injunction in *Trinity Evangelical Lutheran Church of Clairton v. May*, 98 Pa. Commonwealth Ct. 112, 510 A.2d 910 (1986).

[4] Trinity filed a petition for habeas corpus and supersedeas as a result of their being found in contempt of court. This court declined to grant the petition in *Commonwealth of Pennsylvania ex rel. Wayne Cochran et al. v. Charles J. Kozakiewicz, Warden of the Allegheny County Jail, and Robert Dombrosky, Warden of the Clearfield County Jail* (No. 3797 C.D. 1984, filed February 7, 1985).

[5] The chancellor never filed an opinion regarding the issuance of the permanent injunction; therefore, Trinity contends that the case should be remanded for the filing of an opinion. Because the chancellor issued the final injunction solely on the record of the preliminary injunction, the basis for his making the injunction permanent can be ascertained from the chancellor's lengthy opinion on the preliminary injunction. Therefore, the case need not be remanded for the filing of an opinion.

## Motion to Quash

Before turning to the issues raised by Trinity we must address the Synod's motion to quash this appeal, which is based on the failure of Trinity to file post-trial motions as required by Pa. R.C.P. No. 227.1.[6] Generally, the failure to file post-trial motions precludes consideration of the issues on their merits. *Pennsylvania Liquor Control Board v. Willow Grove Veterans Home Ass'n, Inc.,* 97 Pa. Commonwealth Ct. 391, 509 A.2d 958 (1986).

In this case, however, dismissal of the appeal, for failure to file in the trial court a post-trial motion in the nature of exceptions, is not warranted. The appealed order gave no indication that it was other than a final order; it was not labeled as a decree nisi as required by Pa. R.C.P. No. 1517.[7]

> When an order neither comports with the requirements of Rule 1517 nor contains suggestions that exceptions must be filed in order to preserve a right of appeal, the failure to file exceptions will be excused.

*In Re Estate of Dorone,* 349 Pa. Superior Ct. 59, 64, 502 A.2d 1271, 1274 (1985), *petition for allowance of appeal granted,* 511 Pa. 609, 515 A.2d 893 (1986).

Accordingly, we deny the Synod's motion to quash the appeal and proceed to address Trinity's claims.

---

[6] Pa. R.C.P. No. 227.1(c)(2) provides "[p]ost-trial motions shall be filed within ten days after . . . (2) notice of nonsuit or filing of the decision or adjudication in the case of a trial without a jury or equity trial."

[7] Pa. R.C.P. No. 1517 states "[t]he court shall make an adjudication and may do so before the testimony has been transcribed. The adjudication shall consist of . . . (4) a decree nisi."

## Contempt Orders

Trinity asserts that the contempt proceeding was criminal in nature and therefore that they were entitled to a jury trial. They also urge that, under the statutes pertaining to "summary punishment for contempt", the chancellor did not have the authority to confine them for contempt of court.

The preliminary injunction required Trinity to turn over all church property to the Synod and to refrain from interfering with the Synod's use of the property. The amended injunction of December 28 required all persons to desist from abetting violations of the preliminary injunction and directed the sheriff to take possession of the church's property for the use and control of the Synod.

The Sheriff of Allegheny County executed that order, finding it necessary to force an entry into the church building and arrest a group of persons in possession. Pursuant to hearings on January 4 and 7, the chancellor issued contempt orders, imposing a conditional incarceration of not more than thirty days with respect to four individuals and sixty days as to others, providing, in effect, that each incarceration would terminate whenever the respective individual made a commitment to comply with the preliminary injunction.

At the outset, we definitely conclude that the chancellor's contempt order was civil in nature and not a criminal contempt sanction, because it did not impose imprisonment as retribution for past disobedience but would terminate the conditional jail commitment upon a single expression of willingness to comply with the decree. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980).

Trinity bases its claim of a right to a jury trial on 42 Pa. C. S. §4136(a)(3)(i) which provides as follows:

(a)  General rule.—A person charged with indirect *criminal contempt* for violation of a restraining order or injunction issued by a court shall enjoy:

. . . .

(3)(i)  Upon demand, the right to a speedy and public trial by an impartial jury. . . . (Emphasis supplied.)

This statute is inapplicable because it expressly deals with criminal contempts and not with the civil contempt sanctions involved in this case. *See Woodruff v. Township of Lower Southampton,* 68 Pa. Commonwealth Ct. 171, 448 A.2d 692 (1982).

Trinity asserts that the chancellor exceeded his authority in "punishing" them with confinement for their contempt of court. To support this contention, Trinity relies on 42 Pa. C. S. §§4132,[8] 4133.[9] These sections provide that "summary punishments for contempt" are limited to official misconduct, disobedience as to process or misbehavior in the presence of the court and that a punishment of commitment for those contempts are limited to those committed in open court.

---

[8] §4132. Attachment and summary punishment for contempts

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1)  The official misconduct of the officers of such courts respectively.

(2)  Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3)  The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

[9] §4133. Commitment or fine for contempt

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

The chancellor's commitment order by its terms negates Trinity's assertion that it was a punishment; as noted above, a conditional commitment to achieve compliance with a court order is not a jail sentence imposed as punishment. Moreover, the chancellor did not impose the order of commitment summarily, but only after a multiple-step hearing process prescribed for contempt proceedings. *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 6, 253 A.2d 263, 266 (1969). Therefore, the statutes delineating the procedures regarding "summary punishments for contempt" are not applicable in this case.

Accordingly, the chancellor did not exceed his authority in confining Trinity defendants as a conditional commitment to achieve compliance with the injunction. Nor did the chancellor err in failing to grant Trinity's request for a jury trial on the contempt charges.

Trinity also alleges that the evidence was not sufficient to support the chancellor's conclusion that they were in contempt of court for violation of the preliminary injunction.

> The preliminary injunction required that Trinity:
> (1) . . . physically deliver to plaintiffs' designated representative, Rev. Mont O. Bowser, on December 27, 1984 at 10:00 a.m. all keys to the Trinity Lutheran Church building and all other property of Trinity wherever situate, real personal of mixed, including but not limited to all books, records, and insurance policies;
> 
> . . . .
> 
> (c) not interfere directly or indirectly with plaintiff's exclusive ownership, possession and control through its designated representative over all present and former Trinity property, services by the plaintiff's designated pastors at such property and interference with other meetings on such property.

Trinity church council members refused to allow the Synod's designated representatives to enter the church and refused to turn over any property or records. When the Sheriff of Allegheny County arrived at the church a few days later, the members refused to permit him to enter. After the Sheriff broke into the building and arrested these individuals, they were brought before the chancellor pursuant to a rule to show cause why they should not be held in contempt of court. The chancellor asked them if they would purge themselves of the contempt by promising to refrain from interfering with the Synod's use and control of the property. The Trinity members refused to do so.

The above facts supported the Chancellor's finding of Trinity members to be in contempt of the preliminary injunction; therefore, we will not disturb that finding.

## Recusal

Trinity asserts that the chancellor erred in failing to recuse himself from the contempt proceeding which resulted from Trinity's failure to obey the preliminary injunction. Because Trinity did not make a recusal motion before the contempt proceeding, we find the issue waived and not available for appellate review.

Before the hearing on the preliminary injunction, Trinity moved that the chancellor recuse himself from the hearing. After argument, the chancellor denied the motion.

However, before the separate contempt proceeding resulting from Trinity's failure to comply with the injunction, Trinity never made another motion that the chancellor recuse himself. An appellate court will not reverse a trial court for failing to do what it was never asked to do, and will treat any matter not objected to in the trial court as waived. *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Superior Ct. 230, 433 A.2d 40 (1981).

Therefore, Trinity's failure to request that the chancellor recuse himself, before contempt hearing constitutes a waiver of the issue.

## Freedom of Religion and Speech

Trinity contends that the compliance with the terms of the injunction would result in "a chilling effect" upon freedom of religion, separation of church and state, freedom of speech and due process such as to constitute an "unconstitutional exercise of jurisdiction."

The decree on its face in no way limits Trinity's freedom of speech or exercise of religion. The members of Trinity are free to practice their religion as they see fit and to express themselves in any manner, so long as they do not interfere with the Synod's use of the church or disrupt the Synod's exercise of their first amendment rights. Therefore, the injunction does not infringe on Trinity's right to free speech or religion.

## Issuance of Permanent Injunction

The Synod's request for a permanent injunction resulted from a dispute over ownership and control of church property. In *Presbytery of Beaver-Butler v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317, *cert. denied,* 106 S.Ct. 198 (1985), our Supreme Court delineated the role of our courts in adjudicating church property disputes. If the dispute involves the resolution of matters concerning questions of discipline, faith or ecclesiastical rules, commonly referred to as doctrinal questions, our courts are bound by the determination of the church tribunal. If the dispute does not concern doctrinal issues but rather "neutral principles of law" such as contracts, or trusts, our courts are not bound by the decision of the church tribunal. *Id.* 507 Pa. at 265-66, 489 A.2d at 1321. A court of equity nonetheless has jurisdiction to protect property rights,

and the fact that the dispute arose within a church organization will not prevent a court of equity from acting to protect those rights.

Moreover, the chancellor is not bound by the decision of the ecclesiastical tribunal *where the church failed to follow its own rules and procedures. Kaminski v. Hoynak,* 373 Pa. 194, 203, 95 A.2d 548, 553 (1985).

Article VI, §8 of the Constitution of the LCA provides as follows:

A synod may declare a congregation within its jurisdiction defunct if . . . it has ceased to maintain religious services *according to the tenets and usages of the Lutheran Church,* or if its membership has so diminished in numbers or financial strength as to render it impracticable for such congregation to fulfill the purposes for which it was organized, or to protect its property from waste and deterioration. In such cases, . . . all property of the congregation, real, personal and mixed, shall vest in the synod, its successors or assigns. (Emphasis added.)

Article VI, §11 of the Constitution of the LCA provides:

The executive body of the synod to which the affected congregation belongs shall be charged exclusively with the responsibility to make all determinations, whether of a secular, doctrinal or ecclesiastical nature, relevant to the administration of Sections 7 and 8 of this article, *and shall be final subject only to right of appeal to a convention of the synod.* (Emphasis added.)

On November 28, 1984, the Executive Board of the Synod passed a resolution which declared Trinity defunct for failure to "maintain its operations, including its religious services, 'according to the tenets and usages of the Lutheran Church' ". The resolution also found that Trinity has " 'so diminished in financial strength as to

render it impracticable for such congregation to fulfill the purposes for which it was organized' ". On the basis of these findings and under the above quoted sections of the LCA constitution, the Executive Board declared Trinity defunct and all property of Trinity as vested in the Synod.

The Executive Board of the Synod acted within the rules and procedures provided by the church in reaching *its* determination. Moreover, the decision to declare the church defunct was based, at least in substantial part, on the board's determination that Trinity failed to maintain its operations "according to the tenets and usages of the Lutheran Church." A determination that a congregation has failed to maintain its operation in accordance with the tenets of the church is a doctrinal one which does not involve application of "neutral principles" of law. Accordingly, our court is bound by that determination.

Although the Synod followed its internal rules and procedures before the issuance of the preliminary injunction, a question remains as to whether the Synod did so before the injunction became permanent.

The decision of the Executive Board of the Synod, declaring Trinity defunct, is appealable to a convention of the Synod, under Article VI, §11 of the LCA Constitution, as quoted above. During the hearing on the preliminary injunction, Trinity submitted in evidence an appeal that they had filed to be heard by the convention of the Synod. Moreover, Bishop May of the Synod admitted that the appeal had been filed and indicated that it would probably be heard at the next convention of the Synod thereafter, in June of 1985.

At the hearing upon the permanent injunction, Trinity contended that their appeal to the convention of the Synod had never been heard and therefore that the injunction should not be made permanent because of

the Synod's failure to follow its own internal procedures. Trinity requested that the chancellor allow them to present testimony on this issue. The Synod presented no evidence to show that the appeal had every been adjudicated. Nonetheless, the chancellor refused Trinity's request to present any testimony and proceeded to make the injunction permanent.

As previously indicated, although civil courts must defer to the doctrinal rulings of the church, the church must follow its own rules and procedures in reaching that ruling. *Kaminski*.

Because the record fails to indicate whether the Synod adjudicated Trinity's appeal to the convention, this court cannot ascertain whether the Synod has followed its own rules and procedures. If the Synod did follow its own procedure, then our courts are bound by their determination. If they did not, there is no final doctrinal determination to bind our courts. Therefore, the chancellor should not have made the injunction permanent.

Accordingly, we vacate the order of the chancellor granting the permanent injunction and remand for a hearing to receive evidence concerning Trinity's appeal to the convention of the Synod.

## ORDER

Now, January 19, 1988, the order of the Court of Common Pleas of Allegheny County, at GD 84-21773, dated September 17, 1986, is vacated and the case is remanded for a hearing regarding Trinity's appeal to the convention of the Synod.

Jurisdiction relinquished.

Senior Judge NARICK did not participate in the decision in this case.