Southeastern Pennsylvania Synod v. Meena

*John I. Gordon,* for plaintiff.
*Stephen J. Woodside and Erik B. Jensen,* for defendants.

LYNN, *J.,* June 3, 2010

## I. FACTS AND PROCEDURAL HISTORY

The instant matter arose on June 7, 2007 from an imposition of involuntary synodical administration by Southeastern Pennsylvania Synod of the Evangelical Lutheran Church in America (Synod) on The Evangelical Lutheran Church of the Redeemer (Redeemer). Redeemer is an interdependent member congregation of the Evangelical Lutheran Church in America (ELCA) and of the Synod. (N.T. 9/22/2009 at 18.) The Redeemer constitution provides that it is a member of an interdependent part of the ELCA and the Synod, and is subject to the discipline of the church and the Synod. (N.T. 9/22/2009 at 22.) Bishop Claire Burkat is the chief eccle-

siastical officer of the Synod with the responsibility for ministry of the Synod and its congregations. (N.T. 9/22/2009 at 23.)

On June 7, 2007, the Synod, having been assessed of the plight of Redeemer; including: its fragile condition, diminished attendance records, income, expense figures, and following discussion, approved a resolution authorizing Bishop Burkat to take Redeemer under involuntary synodical administration. The Synod imposed involuntary synodical administration in accordance with section 13.24 of the Synod constitution. The Synod constitutional provision section 13.24 states:

"If any congregation of this synod is disbanded, or if the members of a congregation agree that it is no longer possible for it to function as such, or if it is the opinion of the Synod council that the membership of a congregation has become so scattered or so diminished in numbers as to make it impractical for such congregation to fulfill the purposes for which it was organized or that it is necessary for this synod to protect the congregation's property from waste and deterioration, the Synod council, itself or through trustees appointed by it, may take charge and control of the property of the congregation to hold, manage, and convey the same on behalf of this synod. The congregation shall have the right to appeal the decision to the Synod assembly." (Constitution, Bylaws and Continuing Resolutions, Southeastern Pennsylvania Synod—ELCA S13.24.)

On October 11, 2007, Bishop Burkat wrote to the Redeemer congregation announcing that the Synod took action to place Redeemer under involuntary synodical administration and requested an immediate meeting with

the congregation. On November 7, 2007, Redeemer council members met with Bishop Burkat and four trustees that had been selected by Bishop Burkat. At that meeting, Bishop Burkat requested that Redeemer submit to the Synod a list of church material and documents. On November 22, 2007, Redeemer delivered the requested documents to the Synod.

On February 12, 2008, Bishop Burkat wrote to the church council of Redeemer, notifying it that the business of Redeemer Lutheran Church must immediately cease and that Redeemer would be closed. Redeemer council members were instructed to refrain from acting as a church council. They were instructed to turn over all bank records, all financial and administrative documents, the keys to the church, and cooperate with the Synod to wind down church affairs. On that same day, February 12, 2008, Bishop Burkat wrote to all congregants stating that Redeemer council had no power to act as a congregation council, that involuntary synodical administration was in place, and that the trustees appointed by the Synod council would take charge of Redeemer's property, and Redeemer would wind down and close.

On February 24, 2008, Bishop Burkat and the trustees went to the property of Redeemer for a scheduled meeting that was called for by Bishop Burkat. When Bishop Burkat and the trustees arrived, they were told that they would not be welcomed into the church. The church doors were locked, and Bishop Burkat and the trustees were informed that if they did not leave the property, the police would be called.

In June of 2008, the Redeemer congregation held a congregational meeting, in which 11 or 12 members ap-

peared. They voted to appeal the decision of Synod council which imposed involuntary synodical administration. On May 8 and 9 of 2009, the Synod held its annual meeting. Under the Synod constitution, section 7.01 states that: "This Synod shall have Synod assembly which shall be its highest legislative authority. The powers of the Synod assembly are limited only by the provisions in the articles of incorporation, this constitution and bylaws, the assembly's own resolutions, and the constitution and bylaws of the Evangelical Lutheran Church in America." (Constitution, Bylaws and Continuing Resolutions, Southeastern Pennsylvania Synod – ELCA S7.01.) Following a rules and procedure vote, the Synod assembly, by majority vote, approved the procedure to hear the appeal of Redeemer. Synod assembly considered and voted on the resolution that the Synod assembly sustain the decision of the Synod council to invoke section 13.24, taking charge and control of the property of Redeemer, and to hold, manage, and convey the same on behalf of the Synod. Following the presentation of the matter to Synod assembly by members of Redeemer and by the trustees and discussion, Synod assembly voted by a majority vote to affirm the decision of Synod council. (N.T. 9/22/2009 at 13-18.)

In an earlier filed case in February 2008, Redeemer filed suit against the Synod. On September 22, 2008, the Hon. Arnold L. New dismissed that case for lack of jurisdiction. *Redeemer v. SEPA Synod* (0208-3906).

The instant case came before this court as a motion for summary judgment by the Synod. In response, Redeemer filed a cross-motion for summary judgment. Following oral argument on Synod's motion and Redeemer's cross-motion for summary judgment, which

this court heard before trial commenced, the court, on September 25, 2009, sustained Synod's motion for summary judgment. On September 28, 2009, by supplemental order, this court denied Redeemer's cross-motion for summary judgment and further ordered that Redeemer's counterclaim against Synod be dismissed. On October 8, 2009, the instant appeal followed.

## II. ISSUES

*Defendants Raised the Following Issues on Appeal*

(1) Did the court err in its adjudications on summary judgment, where it failed or refused to consider or rule on plaintiff's and defendants' claims on the property questions under the "neutral principles of law" approach as established under controlling authority of the Supreme Court of Pennsylvania and the Supreme Court of the United States?

(2) Did the court err in its adjudications on summary judgment where it failed or refused to accept subject matter jurisdiction on the claims involving the property questions under the "neutral principles of law" approach as established under controlling authority of the Supreme Court of Pennsylvania and the Supreme Court of the United States?

(3) Did the court err in its adjudications on summary judgment, where it failed or refused to find that SEPA Synod's articles of incorporation control the disposition of all issues concerning the property questions, particularly Synod's power to take charge and control of Redeemer's property and to hold, manage and convey Redeemer's property on behalf of Synod?

(4) Did the court err in its adjudications on summary judgment, where the court failed or refused to find the relevant articles of incorporation of the SEPA Synod, together with the collective organic documents in the record, control over any inconsistent Synod bylaw (*i.e.,* Synod's constitution) on the question of Synod's power to hold, manage and convey Redeemer's property on behalf of Synod?

(5) Did the court err in its adjudications on summary judgment, where it failed or refused to find that the decision by Synod's highest judicatory on the questions impacting control, management, conveyance and/or ownership of Redeemer's property would violate the law of the land under controlling law of the Supreme Court of Pennsylvania and the Supreme Court of the United States, rendering the highest judicatory decisions void?

(6) Under neutral principles of law, did the court adjudicate summary judgment on the questions involving Redeemer's property under a manifest abuse of discretion, where the court failed or refused to consider or recognize the weight and controlling authority of all of the organic documents in the record, viewed in light of controlling law of the Supreme Court of Pennsylvania and the Supreme Court of the United States?

(7) Did the court err in its adjudications on summary judgment, where it failed or refused to reject the doctrines of collateral estoppels and/or the law of the case, or in the alternative, did it err in following such doctrines, as may have arisen under the opinion of Judge Arnold New in the matter *Redeemer v. SEPA Synod* (02083906) dated September 22, 2008?

## III. DISCUSSION

Summary judgment is proper where the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 175, 553 A.2d 900, 902 (1989); Pa.R.C.P. 1035. The court must examine the record before it in the light most favorable to the non-moving party, and resolve all doubts against the moving party. *Murphy v. Diogenes A. Saavedra M.D. P.C.,* 560 Pa. 423, 426, 746 A.2d 92, 94 (2000). It is not the court's function to determine facts, but only to determine if a material issue of fact exists. *French v. United Parcel Service,* 377 Pa. Super. 366, 547 A.2d 411 (1988).

Contrary to Redeemer's argument, this court did consider the "neutral principles of law approach" to the underlying matter but the court declined to accept subject matter jurisdiction under this approach. Under the "neutral principles of law" approach, "in cases where the resolution of a property dispute involves no inquiry into ecclesiastical questions, courts of this Commonwealth are to apply the same principles of law as would be applied to non-religious associations." *Presbytery of Beaver-Butler of United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985), *cert. denied,* 474 U.S. 887, 106 S.Ct. 198 (1985), However, the instant case involves an inquiry into ecclesiastical matters. The present matter concerns a "core" question of church discipline and internal governance. The thrust of the matter relates to Synod's internal decision to shut down Redeemer's

congregation. Here, the Synod council made a decision. That decision contained with it a right of the congregation to appeal. That appeal took place. The congregation appealed to the Synod assembly, the highest judicatory body of the Synod. At that time, the congregation had an opportunity to present their case. There was discussion and a vote. And the highest judicatory body of the Synod, affirmed the decision to impose involuntary synodical administration. The Synod acted according to its internal operating rules and procedures in making its determination, and Redeemer was given the right to appeal as well as the right to present its case.

Further, the decision to impose involuntary synodical administration was based, at least in substantial part, on the Synod's determination that Redeemer had become so scattered or so diminished in numbers "as to make it impractical for such congregation to fulfill the purposes for which it was organized." A decision that a congregation can no longer fulfill the purposes for which it was organized is a doctrinal one that does not involve a "neutral principles" of law approach. For this court to analyze whether Synod's action was improper would require inquiry into the criteria Synod used when it decided to close the congregation. As such, this court properly declined to apply the neutral principles of law approach.

This court reasoned that the inevitable danger of governmental entanglement with such a "core" question precludes judicial review. See *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 721, 96 S.Ct. 2372, 2386 (1976). The rule of action which should govern the civil courts is, that, whenever the questions

of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them. *Id,* at 710. As such, this court did not err in refusing to find Synod's articles of incorporation control the disposition of this issue, but rather, the court properly enforced the decision of the U.S. Supreme Court which has ruled on this issue. See *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 721, 96 S.Ct. 2372, 2386 (1976).

Here, the highest judicatory body of the Synod reviewed the plight of the Redeemer and applied its own set of standards, including notice and an opportunity to be heard, and affirmed the decision to impose Synodical administration. For this court to analyze whether Synod's action was improper would require inquiry into the criteria Synod used when it decided to close the congregation.

Likewise, this court did not err in declining to find controlling Synod's articles of incorporation, together with the collective organic documents in the record, because Pennsylvania law also holds the judgment that courts should not interfere with controversies over religious authority. Pennsylvania courts have long recognized that the First Amendment requires that civil courts defer to the resolution of issues of religious doctrine or policy by the highest court of a hierarchical church organization. *Trinity Lutheran Evangelical Church v. May,* 112 Pa. Commw. 557, 537 A.2d 38 (1998) (final doctrinal determination by the Synod will bind the civil court).

Accordingly, this court relied on the appropriate controlling law and did not adjudicate summary judgment under a manifest abuse of discretion. This court properly sustained Synod's motion for summary judgment, denied Redeemer's cross-motion for summary judgment, and dismissed redeemer's counterclaim against Synod.

## IV. CONCLUSION

Based on the foregoing, this court's order sustaining Synod's motion for summary judgment should be affirmed.